# Railroad Commission of Alabama v. Central of Ga. Ry. Co.

## Bill to Enforce An Order of the Commission.

### (Decided April 20, 1909. 49 South. 237.)

*Carriers; Discrimination; Statutes.*—Where a carrier made no distinction in rate between compressed and uncompressed cotton, but included in its rate the cost of compression and accorded to both places the same privilege of rebilling and through rating, but declined to compress the uncompressed cotton at a compress plant in the district, and carried the cotton to a distant place and had it compressed at a plant in which it was interested, though the cost of compression was not greater at one plant than at the other, this did not constitute the carrier guilty of discrimination in violation of sections 17 and 32, General Acts 1907, p. 123.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by the Railroad Commission of Alabama against the Central of Georgia Railway Company to enforce an order of the commission adjudging the existence of discrimination in a course practised by the carrier and forbidding its continuance. From a decree for despondents complainants appeal. Affirmed.

ALEXANDER M. GARBER, Attorney General, and THOMAS W. MARTIN, Assistant Attorney General, for the State. This case is founded upon section 17, General Acts 1907, p. 123. Said section is not void on account of being in contravention of section 243 of the Constitution of 1901.—*Ga. R. R. Com. v. Smith,* 79 Ga. 694; *Mo. Pac. v. Bd. of Trans.,* 29 Neb. 556. The fact that the statute prohibits such a practice under a penalty, does not prevent a court of equity from enjoining its continuation.—*Hundley v. Harrison,* 123 Ala. 292; *Rouse v. Martin,* 75 Ala. 510. Section 32 of said Act

confers the powers herein attempted to be exercised. The order of the railroad commission was not an interlocutory order, but more in the nature of a final decree, the meaning and effect of which should be ascertained by reference to the different parts of the order of the railroad commission.—5 Ency P. & P. 1060. The title of the act is sufficiently comprehensive, and in ascertaining the meaning of section 17, the whole statute and all of its parts are to be taken together and the intention and meaning so ascertained should prevail.—25 A. & E. Ency of Law, 616. The legislature has a right to declare a prima facie rule of evidence.—*State v. Thomas,* 144 Ala. 77; *State v. Vann,* 43 South. 357; 41 Am. St. Rep. 278.

STEINER, CRUM & WEIL, for appellee. The section of the act under consideration now section 5540, Code 1907, is a purely criminal statute and does not invest the commission with power to make the order sought to be enforced. The attempt made here is a legislature one, and must fail.—*Cent. of Ga. Ry. Co. v. R. R. Co.,* 161 Fed. 982; 12 Interstate Com. Rep. 375. The attempt is clearly a delegation of legislative power, and is void.— *Schults v. Eberly,* 82 Ala. 242; *Clark, et al. v. Port of Mobile,* 67 Ala. 217; *Harland v. The State,* 130 Ala. 155; *Mitchell v. The State,* 134 Ala. 392; *State v. Great Northern,* 100 Minn. 445; *Field v. Clark,* 143 U. S. 694.

McCLELLAN, J.—This bill is filed by the Railroad Commission of Alabama for the purpose of invoking the aid of equity to enforce an order of the commission adjudging the existence of a certain descrimination in course of practice by the appellee, a common carrier, and forbidding its continuance. The authority for this order is cited as found in the act approved February 23, 1907 (Acts 1907, p. 117). The particular sections relied on are those numbered 17 and 32. The court below deni-

ed the relief sought; the pleading leading to the result being demurrer to the bill as amended and motion for an injunction pendente lite commanding the observance of the stated order. The record is necessarily voluminous, but the basis for the granting of the order in question by the commission, and on which the aid of the court of equity to enforce it is sought, appears in the averments of paragraph 5 of the bill as amended. The views entertained obviate any necessity to consider now any of the questions with reference to the constitutionality of the whole or parts of the act involved, or to enter upon a full discussion of the meaning and effect thereof.

The gist of the complaint, out of which the commission's order grew, if we may assume to state it as from the averments of the whole bill as they bear upon the complaint, is that the appellee makes no distinction in rate between compressed and uncompressed cotton; that the compression of cotton is a mtater of importance to the carrier alone, in that the reduced bulk of the compressed bale economizes space in shipment; that the carrier includes in its rate for the transportation of all cotton, compressed and uncompressed, the cost of compression, and under its practice uncompressed cotton, in the Union Springs district, is compressed at Montgomery, where compression is had, at the expense of the carrier, at the Atlanta Compress Company's plant, in which the carrier has an interest, as well as a contract therewith, to compress for the carrier cotton so delivered to the Atlantic Company; that at Union Springs there is a plant properly equipped and designed to compress cotton; that the carrier, while willing to accord to cotton billed to a more remote destination, but which is stopped in transit and compressed at the Union Springs plant, the same privilege for rebilling and through rating from the point of first shipment to final destination

as is accorded cotton compressed at the Montgomery plant, yet it declines to pay the charge and expense necessary to compress cotton at the Union Springs plant, as is its practice to do at the Montgomery plant, notwithstanding such charge and expense at the Union Springs plant is not greater than that exacted and paid by the carrier at the Montgomery plant.

Ruling on substantially the case state, the Interstate Commerce Commission, in an opinion by Clements, Commissioner (*Commercial & Industrial Ass'n of Union Springs, Ala. v. Central of Georgia Ry. Co.*, 12 Interst. Com. R. 375, 377), said: "In view of this statement, which may be taken as substantially true, the complaint is narrowed down in substance to the refusal on the part of the defendant (this appellee) to patronize the compress at Union Springs." That the quoted conclusion was then true, and that so it is on the record before us, is too apparent for doubt. The question of differential rates on compressed and uncompressed cotton, in the territory affected, is not a factor in the case. The commission's order itself eliminates that consideration, for a reason therein given. Hence it necessarily follows that the discrimination complained against is wholly predicated upon the practice of the carrier in selecting the plant at which compression of cotton shipped over its lines shall be, at its cost and expense, compressed. As indicated, the compression is a service of no concern to the producer. It simply enables the carrier to put two bales of compressed cotton in a space one uncompressed bale would occupy. The carrier pays the cost and expense of a process resulting in such benefit peculiarly and only to it. Naturally, those concerned with the Union Springs Compress and the people of that community are interested in the patronage of that plant. Any deflection of business of that character therefrom affects

[Railroad Commission of Alabama v. Central of Ga. Ry. Co.]

the enterprise and the business activity of Union Springs. But, natural and certainly righteous as their stated interests are, that alone cannot avail to condemn the described practice of this carrier. Such a practice is in no sense a discrimination or a favoritism violative of the enactments in question. The practice is only an exercise by the carrier of its clear right to economize its shipping facilities at its own expense, just as it has the right to locate its shops wherever it sees fit, or to buy its equipment in any market, and this without violating any law of which we know, and without the breach of any duty to any interest or community.

There is no obligation on the carrier to compress cotton. There is no right in any one to compel it to compress cotton delivered to it for transportation. Its practice in so doing is merely the execution, at its own expense, of the idea that, the smaller the article of this class, the more economically may it be transported. Whether the place at which the compression of the cotton is accomplished is near or remote from the place of original shipment is a matter of no concern to any one save the carrier. That a result of this practice is that cotton is concentrated at Montgomery, rather than at Union Springs or any other place on the line of road, cannot be discriminatory, if the practice itself is not discriminatory and unlawful. Such a natural consequence of the exercise of the right must necessarily be free from wrong if the practice is so free. If the practice in question were held to be a discrimination, it is evident that to each erected compress on this line of railroad the rule of equality must be applied; and the consequence would be that the prime idea in the compression of cotton by carriers would become secondary to a conceived public interest in forbidding other than equal distribution, among all compresses, of the patron-

age arising from the business. A newly installed compress would call for a readjustment of the proportion these theretofore existing had enjoyed, and territorial limitations established within which the right of patronage by respective compreses would be confined; and these impractical consequences would be founded upon an act in which the public, in whose interest only inhibitions against discriminations are always made, have no tangible interest—an act voluntarily undertaken by the carrier and at its own expense, for the purpose of facilitating its business and economizing the space in its care. The act of compressing cotton, as shown in this record, works no discrimination against Union Springs or the compress thereat, and we therefore affirm the decree below.

    Affirmed.

    DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.